CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

KEVIN J. BARRY (CABN 229748)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6840
FAX: (415) 436-7234
Email: kevin.barry@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 24-CR-0244 SI |
| Plaintiff, | ) ) | **UNITED STATES SENTENCING MEMORANDUM** |
| v. | ) ) | Hearing Date: February 20, 2026 |
| JAHPREE DARIOUS JONES, | ) ) | Hearing Time: 11:00 am |
| Defendant. | ) ) | Hon. Susan Illston |

**INTRODUCTION**

The Defendant, Jahpree Jones, stands before the Court to be sentenced after his guilty plea to a violation of Title 26, United States Code, Section 5861(d), possession of an unregistered silencer. The government respectfully submits this sentencing memorandum to indicate that it has no objection to the Presentence Report and to recommend that the Court impose a sentence of 24 months, followed by three years of supervised release. Because of Section 3353(a) factors, the government appreciates that the Court is likely to vary downward from the Guidelines, including because a defendant in a case arising from a parallel investigation into firearms trafficking received a significant variance, and the Probation Officer has recommended a significant departure to 8 months. However, the government respectfully submits that a term of a period of some form of custody—perhaps including home confinement—is

US SENTENCING MEMORANDUM       1
24-CR-0244 SI

necessary because of the serious nature of the offense.

**DEFENDANT'S OFFENSE CONDUCT**

Defendant Jones negotiated sales of a firearms in the form of unregistered silencers and "Glock switches"—attachments to Glock-style pistols that convert those weapons to fully-automatic fire—to a confidential informant (CI) working for the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF).  The purchases were arranged after the Defendant advertised silencers and Glock switches to the public on Instagram.  Through several transactions, Defendant Jones sold four silences to the CI, some for 9mm handguns, and others for assault-style firearms, such as rifles that fire 5.56 mm ammunition.

**SENTENING GUIDELINES CALCULATION**

The government agrees with the Presentence Report's calculation of Defendant's adjusted offense level of 17 and status of CHC I.  PSR ¶¶ 29, 33.  This results in a Guidelines range of 24-30 months.

**SECTION 3553(A) FACTORS**

The factors listed under 18 U.S.C. § 3553(a) direct the Court to impose a sentence that is sufficient, but not greater than necessary, to achieve the goals of sentencing.  *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  The key factors in this case are the nature and circumstances of the offense and the history and characteristics of the defendant, 3553(a)(1), the need for deterrence, 3553(a)(2)(B), the Guidelines range for the offense, 3553(a)(4)(A), and the need to avoid unwarranted sentencing disparities, 3553(a)(6).

With respect to the nature and circumstances of the offense, Defendant was engaged in the business of selling parts for weapons to make inherently dangerous objects even more lethal and was selling them to anyone with the money to pay for them.   Unlike licensed firearms dealers who are required to run background checks and to ensure that heavily regulated and dangerous firearms such as silencers do not fall into the wrong hands, Defendant Jones followed no requirement to know his customers.  While he was not deliberately funneling arms to street gangs, drug trafficking organizations, or known convicted felons,[1] at the same time, the Defendant took no steps to ensure that this didn't

---

[1] For this reason, Subsection b(5) of Section 2K2.1, does not apply. This Specific Offense Characteristic adds a +4 level enhancement to the base offense level "if the defendant trafficked in firearms."  *Id.*  Defendant Jones was certainly in the business of selling firearms, but the Guidelines also

happen.

Selling silencers without a license is a serious offense and presents a significant danger to the public. This danger is magnified when illegal silencers are included in such sales, and when a person is willing to sell devices to convert semiautomatic pistols into fully automatic machine guns. However, Defendant presents the rare case of a defendant in a firearms case who has zero criminal history points, At the same time, and as Defendant Jones admitted to the Probation Officer in his acceptance of responsibility, he made a conscious choice to sell guns for money, knowing that doing so is illegal.

With respect to deterrence, up to the point where he started selling silencers and Glock switches on Instagram, Defendant lived a life free of criminality. His conduct since his arrest has been good, and he accepted full responsibility in this case, both in his statements to the Probation Officer in the PSR, ¶ 18, and by pleading guilty without contesting the charges. However, a sentence of some form of custody will not only deter future criminality on Defendant Jones' part, it will send a message of general deterrence. The Defendant knew that selling Glock switches and silencers was illegal, but he did it anyway. He not only ignored the danger to the public; he did not consider the negative consequences to himself, such as punishment through incarceration. A term of custody will communicate to people considering moving into illegal firearms trafficking that violating laws that are necessary to keep the public safe can come at a high personal cost.

Although Defendant Jones' criminal history score of zero makes him an outlier among defendants facing sentencing under U.S.S.G. § 2K2.1 (which governs sentencing under 18 U.S.C. § 922(g)(1)), the Guidelines take account of his fact by generating a significantly lower range for people like the Defendant compared to others with extensive criminal records. *Compare* U.S.S.G. Sentencing Table for offense level 17, CHC I (24-30 months) *with* CHC VI (51-63 months). The base offense level of 17 for Defendant's crime similarly takes into account the seriousness of the offense—allowing unregulated firearms into the public, and potentially into the hands of prohibited and dangerous

---

require that the defendant know or have reason to know that he or she was transferring weapons to a person whose possession of the firearms would be unlawful. U.S.S.G. § 2K2.1, Application Note 13. The circumstances of Defendant Jones' sales support the inference that he did not care whether this was the case, but the government is not arguing that he knew or had reason to know that he was selling to prohibited persons.

individuals.  At the same time, though, Defendant Jones' lack of criminal history and other aspects of mitigation presented in the Presentence Report suggest that the Court should impose a term at the low end of that range.

In addition to the areas of mitigation suggested in the PSR, the Court should be aware of a similar case arising out of a parallel investigation by the ATF that the Bureau conducted at the same time it was investigating Defendant Jones.  That investigation led to similar charges of trafficking silencers in *United States v. Carl Anderson*, 24-CR-0246 JB, filed at the same time as Defendant Jones' Indictment.  The defendant in that case pleaded guilty and similarly faced an adjusted offense level of 17 with a CHC I, or 24-30 months.  At sentencing, Judge Donato varied considerably downward to a sentence of time served.

The defendant in that case had zero criminal history points, completed drug treatment with no positive tests, and secured full-time employment on pre-trial release.  In fact, he was promoted several times and was in a supervisory position at the time of sentencing.  That defendant turned to illegal firearms trafficking as a recent effort to make money after suffering severe burns in an outdoor accident, which required multiple surgeries and a lengthy recuperation, and which impacted his ability to be employed as he recovered.  He also had strong family connections and was the primary caregiver for a minor child.  Judge Donato was persuaded that the defendant posed little risk for reoffending, and the Court took what it described as the unusual step of taking a chance on the defendant and imposing a non-custodial sentence.  In the Court's words, it rarely does so, and it rarely works out, but Judge Donato was willing to do so in that case.

In its sentencing in *Anderson*, the government made similar arguments to those made here. Under Section 3553(a)(6), the government appreciates that the outcome in *Anderson* may inform the Court's analysis here, and it is providing this information to the Court for that purpose.  With that in mind, the government is advancing arguments to support a Guidelines sentence to underscore the danger of Defendant Jones' conduct, to stress the danger to the public it posed, and because of the need for general deterrence.

//

//

US SENTENCING MEMORANDUM                4
24-CR-0244 SI

If the Court similarly varies downward from the Guidelines, the government respectfully requests that the Court impose some term of custody, perhaps including home confinement, so that there is an aspect of punishment for this offense.

DATED: February 17, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/S/ *Kevin J. Barry*

_____
KEVIN J. BARRY
Assistant United States Attorney

US SENTENCING MEMORANDUM              5
24-CR-0244 SI